The opinion of the court was delivered by
Watkins, J.
On the 15th of June, 1888, Mrs. Agnes Jane Moore filed an account in the succession of her husband, John T. Moore, exhibiting a statement of the property of which her husband died possessed — all of which was community; of the amounts paid in legacies and expenses; and of the amounts proposed to be paid by the community to the spouses, respectively, and in the settlement of the separate estate of the deceased.
She prayed that the account be confirmed, and that she be recognized as owner of oné-half of said community property, in her capacity of surviving widow in community, and also as owner of *333 one-third of the remaining one-half, under the will of her husband, subject to the future adjustment of the legitime of the forced heirs, when the time of partition shall arrive.
She further prayed that she be recognized as the usufructuary of the remainder of the one-half of the property inherited by the forced heirs, and that her possession of all said community property, in her said capacity, be recognized.
She caused Julia Moore, a major, and the minors Hickey and Flannagan, to be cited. The other heirs approved the account and demands of the petitioner in their entirety. The cited heirs opposed the homologation of the account, on the ground that it did not fix the amount of the disposable portion of the succession and property of the deceased, nor the respective shares of opponents as heirs, and in other particulars requiring no mention. The prayer of the opposition is,“that the said Mrs. Agnes Jane Moore, individually and as executrix, etc., be ordered” to so amend her account as to conform thereto.
On the trial this opposition was rejected and disallowed, and the account homologated. The petitioner was recognized as owner of one-half of the community property in her capacity as surviving widow, and of one-third of the remaining half under the will of her •deceased husband “subject to the future adjustment of the legitime of the forced heirs, when the time for partition shall arrive,” and as usufructuary of so much of the remaining one-half as may be inherited by the forced heirs.
Her right of possession of the whole was recognized as taking effect at the date of her husband’s death.
Opponents applied for a new trial on the ground that the judgment rendered is contrary to law and the evidence; and further, because the court erred in holding that the fixing of the disposable portion should be postponed until the time for making a partition|shall arrive.
The motion was to the effect that, under the law, and our recent opinion in 40 An. 581 — in this succession — the amount of the disposable portion must be fixed now.
For the purposes of this motion the entire record in that case was made a part of it. Opponents’ theory is, that they, as forced heirs of deceased, in that case sued for a reduction of the testamentary donations mentioned in their ancestor’s will, and that Jt "was therein •decided that a reduction must be made, and how it’must be made; *334 and, that the fact that their inheritance is burthened with a right of usufruct, does not deprive them, as forced heirs, of the right of having the amount of their inheritance, at once, determined-
The court held that “the law and the evidence, being; in favor of' the defendant in rule,” it must be dismissed-
Therefore the opponents appealed.
I.
The first question presented and urged on the part of the accountant and appellee, is one of practice, and that is, whether, in the state of the record we have outlined, we can examine and revise the judgment appealed from. The statement of the appellee’s counsel is, substantially, that the mortuary proceedings, and proofs in the succession of John T. Moore, were not offered and filed in evidence on the original trial of the account, and that same were not considered by the judge a quo in determining the issues before him; and his contention is that, although they were considered on the hearing-of the motion for a new trial, this appeal is prosecuted from that refusal, and nothing can be decided.
On the other hand, appellant’s counsel contend that the account and opposition were received and treated by the judge a quo as integral parts of the original suit for reduction, and all proceedings as parts of the record.
That on the trial of the rule for a rehearing counsel for appellees objected to such record and mortuary proceedings being considered, and his objections were overruled, but he retained no bill of exceptions thereto.
The record furnishes no solution to the question-, It contains no bill of exceptions, and no note of the evidence offered on the trial. The original record appears annexed to the transcript of appeal.
The two cases cited by appellee’s counsel as authority, Brooks’ Syndic vs. Weyman, 3 M. 16, and Fire Insurance Company vs. Walton, 2 R. 562, are inapplicable. Those were jury cases in which motions for new trials were entertained and refused before judgments had been signed, and appeals at once taken therefrom were dismissed, as a matter of course. But in the instant case, a final-judgment was rendered and signed before the appeal was taken, and the judge’s ruling on the application for a new trial is reviewable. as any other incident of the case.
*335 The whole case is before us, and we must take cognizance of the record as we find it, and decide the issues presented. We must assnme that the judge a quo had before him sufficient evidence to justify his undertaking to decide them, and intelligeutly, to do so.
This rule was approved by us, in Nugent vs. Stark, 34 An. 628, and by our predecessors in numerous cases.
In Simmons vs. Barrett, 23 An. 504, they say:
“We find no note of evidence in the record. In such a case we will presume the court a quo, in rendering judgment, proceeded on proper evidence.” Citizens Bank vs. Bringer, 22 An. 628; Smith vs. City of New Orleans, 24 An. 20; State vs. Monasterio, 26 An. 634; Succession of Pilcher, 39 An, 362.
The parties were not required to have their evidence reduced to writing, or to see that a note is made of the evidence introduced.
It was competent for them to have secured a statement of facts. C. P. 602, 603; H. D. 608.
But the record now before us stands in its place. The whole of it, and the mortuaria are before us. The judge a quo passed upon it, and decided on the merits of the case, and “by reason of the law and the evidence” dismissed the opposition, as his decree recites. The issues of law as well as of fact are distinctly made. The appellee has not moved for a dismissal of the appeal, but has joined issue, and her counsel have presented us with an oral and printed argument, and demand an affirmance of the judgment appealed from, on a hearing on the merits. Our affirmation of that decree would operate res judicata as to opponents’ demands. Granger vs. Singleton, 32 An. 898.
In case we feel authorized to adjust the amount of the disposable portion, appellee’s counsel concedes the sufficiency of the evidence in the record before us, and says “there is no error in the figures as to values.” If, then, the questions are such as we can decide, it is our duty to examine and decide them rather than turn opponents around to another action for the ascertainment of their rights. In any event, they are entitled to that.
II.
Appellee’s counsel do not argue, orally or in brief, the question of opponents’ right to have the amount of the disposable portion of the deceased’s fortune fixed and determined now. At any rate, the competency of the court to do so is not doubted by them.
*336 The questions presented in the account, and in the accompanying petition, seem to necessitate the present determination of the amount of the disposable portion, the ascertainment of the reduction to be made of the legacies, and the fixing of the amount of the legitime of opponents, as forced heirs of the deceased. The accountant’s petition demands^ and the judgment awards to her the ownership of ■one-half of the community property as surviving widow; one-third of the remaining one-half, under the will of the deceased; and the usufruct of so much of the share of the deceased as may be inherited by all the heirs. The judgment also recognized her rights •of possession from the date of the death of her deceased partner in community.
"Why should the amount of the legitime of the heirs be relegated to future adjustment, or deferred until the time for making a partition among the heirs shall arrive?
It was certainly just as competent for the court to decide one ■question as the other. The heirs are quite as much entitled to have their rights and interests determined as the widow had to have her’s ■determined.
The Code declares that forced heirs can sue for the reduction of ■excessive donations, whether inter vivos or mortis causa, “on the ■death of the donor or testator.” R. C. C. 1504.
It also declares that “actions for the reduction of excessive donations” are prescribed by five years. R. C. C. 3542. The death of the donor or testator is the date from which this prescription begins to run.
It is therefore manifest that the law contemplated the institution of .such suit, without reference to the usufruct of the surviving parent ,of the forced heirs. That such an issue is to be determined in the mortuaria, and before the succession of the deceased is wound up .and the property surrendered into the possession of the usufructuary, and which can not be done until the succession debts and charges are paid, including, of course, special legacies is clear; and we conceive that the reduction of donations inter vivos must be likewise determined. Indeed, we deem it very questionable whether the utile iempus does not pass with the closing of the succession, and the transmission of the property to the heirs of deceased. For the survivor’s ■usufruct is of property in kind, and not of a succession.
*337 The account under consideration carries as a credit the sum of $10,000, being the amount of two special legacies the executrix has discharged, but it makes no mention whatever of the donation inter vivos of $100,000 in United States Government bonds in favor of the accountant. The effect of the decree is to recognize the surviving widow’s right of possession and usufruct of the property of the deceased, and her right of retaining those bonds in her possession until her death or marriage; and to relegate opponents to a future litigation, in partitioning the property, to settle their right of reduction. Clearly, such a course is impracticable, and not the one contemplated by law. We are of the opinion that the reduction, if any, should be made now, and before the succession of deceased is closed.
III.
There is no doubt of the fact that one of the objects to be attained by the contestation of the opponents in the Succession of Moore, 40 A. 531, was to obtain either the revocation or reduction of the donation inter vivos of $100,000 in favor of Mrs. Moore. It is so stated in precise terms in our opinion in that case. For, say the court:
One of the objects of “this litigation is to have it judicially declared * * that the donations of securities and cash made by the deceased to his wife, in New York and New Orleans, are nullities, and if not such, are excessive, and should be reduced to the legal quantum.”
They say the defence is “that the donations attacked are valid,” and that the judgment therein appealed from held that they were simulated. The validity of those donations was maintained by that opinion, but it declared that “it is beyond all dispute that the plaintiffs, who are forced heirs, have, by the law, the right to bring an action in reduction.” For, say the court, “it is manifest that, unless they enjoyed that privilege, the exercise of which is optional with them, the articles of the Code, which prohibit excessive donations, when there exist forced heirs, would be dead letters, read out of the book altogether.”
The court concludes its examination of this branch of the case thus:
“There is no proof in the record that we have been able to discover establishing the value of the bonds at the death of Mr. Moore,. *338 and there is no specific averment or prayer on the subject that can justify a decision, presently, of the question, whether the donations exceed, or not, the disposable portion, so that this matter must be left open for future consideration and determination in ot/ier pro - c eedings.”
The donation to Mrs. Moore of $7985.57 which figured in that case has been abandoned, and the donation of the $100,000 of bonds, alone, remains for discussion.
It is evident that Mrs. Moore’s counsel intended to obtain the homologation of a final account and terminate her trust as executrix. For it has been frequently held that by this means only could she be thus relieved.
Succession of Frazier, 35 An. 382, and in other eases, an executor’s right to relief had to be determined as a condition precedent to his possession as owner and usufructuary being recognized.
We think that the question of the reduction of the $100,000 donation was correctly raised on the trial of the final account, and being thus raised it was “ such other proceeding ” as was contemplated in our former opinion and within the option of opponents. As we said in Frazier’s succession: “These are all consecutive proceedings in the same judical cause, viz: the succession of John Frazier;” so we may say in this, that these are all consecutive proceedings in the succession of Moore.
On the main issue appellee’s counsel say in their brief “there is no error in the figures as to vahies, but there is error as to the mode of adjustment.” Page 2.
Of the error in the mode of adjustment, they say:
“The donations were of community property, and came out of the community, and therefore only one-half is to be returned to the estate of the deceased. Dickson vs. Dickson, 33 An. 1376.”
The principles of law applicable to collations to be made among heirs of an estate, are not applicable here, and the question under consideration in the Dickson case was that as to “ collations to be made by the several heirs.”
On this question the court expressed the opinion in Succession of Moore, ante, that “the widow, not being an heir, can not be required to collate, if the donations exceed the disposable portion.”
They further say:
“ It is because of that right of action, that the’ law provides that *339 in determining the question of reduction, the property disposed of inter vivos, must be fictitiously added to that belonging to the donor .at the time of his death, and appraised at its value R. C. C., 1505, 1235.
“ It also emphatically provides, in calculating the disposable portion, that all the property donated, or bequeathed by the deceased, must be included, whether given to the children, to relations, or to strangers. R. O. C. 1234'”
That case furnished a good illustration of that rule of law, because the widow claimed ownership of one-half of all the property, in her own right, and of the disposable portion, under the will, and as the usufruetuaiy of the legitime of the heirs. The opinion is to the effect that neither question can be determined until the amount of the donation inter vivos is fictitiously returned into the succession, and that that could not be done until the value of the United States govern-ment bonds were ascertained. This has been done. The widow is, therefore, entitled to one-half; the heirs are entitled to two-thirds of the other one-half, as their legitime; the remaining one-third of one-half is the disposable portion, from which special legacies must be first paid, and to the residue of which the widow is entitled, as universal legatee, if it be in excess of donations, and, if it fall short of them, they must be correspondingly reduced. To arrive at a proper .adjustment of the disposable portion, as well as of the legitime of the heirs, the value of the government bonds must be fictitiously returned to the active mass of the community, so that from the whole a proper -deduction can be made of the community debts and charges and the net value of community assets ascertained. It can then be apportioned on the basis suggested above. Inasmuch as the proved value of the government bonds is shown to be $126,000, we will take that as the correct amount to be thus fictitiously returned.
The following is the proper computation, viz:
'Total assets of community inventoried - $284,090 05
Value of bonds returned ------- 126,000 00
$410,090 05
■Community debts - -- -- -- -- 11,480 66
Net community assets ------ $398,609 39
Widow’s one-half interest ------ $199,304 69
*340 The net amount of deceased’s estate is composed of
•one-half of community assets - And his separate estate ------ §199,304 69' 7,000 00
Aggregating Disposable portion of one-third - §206,304 69 68,768 23
The legitime of two-thirds - §137,536 46
Of this sum each one of the nine branches are entitled to one-ninth, or §15,281.83, and to each of said nine heirs’ shares the usufruct of the widow attaches.
These amounts are represented by cash and property in kind, as stated in the inventory, and which on settlement among the parties, at the termination of the usufruct, are to be restored in kind at the original appraisment thereof.
It is therefore ordered and decreed that the judgment appealed from be so amended as to fix the disposable portion at the sum of §68,768.23; the amount of the legitime of the heirs at $137,536.46; and the respective portions of the nine heirs, severally, at §15,281.83.
It is further ordered and decreed that as'thus amended the decree of the judge a quo be affirmed, costs to be taxed against the succession.
Fenner, J., absent.